JOSEPH WILLIS of Pago Pago, Plaintiff

v.

ROBERT WILLIS of Apia, TONY WILLIS of Pago Pago,
PAUL WILLIS of Pago Pago, JOSEPHINE WILLIS LEIATO
of Pago Pago, SIO LEIATO of Pago Pago, DORA WILLIS
of Pago Pago, DAISY WILLIS AIFILI of Aunuu,
AIFILI of Aunuu, ALEXANDER WILLIS, JR. of Pago
Pago, GEORGE DANIELSON of Pago Pago, FALESAU
WILLIS ASI of Apia, and ASI of Apia, Defendants

## No. 49-1947

## High Court of American Samoa

### Civil Jurisdiction, Trial Division

[Land: "Tuamauga" and "Faipa" in Fagatogo]

## September 22, 1947

ARTHUR A. MORROW, *Chief Justice;* LIUFAU, *District Judge;* and MALEPEAI, *District Judge.*

## DECISION

Heard at Fagatogo August 28 and 29, 1947.
Joseph Willis for himself and the other Willis heirs.
Falesau for herself and Asi.

MORROW, *Chief Justice.*

Complainant Joseph Willis filed his bill, designated a bill for accounting, praying for the determination of the title to certain lands in Tutuila, for an accounting, and for further relief. At the hearing the issues were narrowed by the parties to the question of title to the lands, Tuamauga (described in Volume 2, Register of Transfers, pages 235–239) and Faipa (described in Volume 1, Register of Native Titles, pages 86–90).

Alexander Willis, who died in January, 1943, was the father of complainant Joseph Willis and respondents Tony Willis, Josephine Willis Leiato, Dora Willis, Daisy Willis Aifili, Alexander Willis, Jr. Hereinafter in this opinion, such children of Alexander Willis will be referred to as the Willis children and Alexander Willis as Alex.

Alex was married twice; first to May Williamson, a half-European woman, and after her death to Falesau, who is the respondent Falesau Willis Asi. Alex was half European and half Samoan. Josephine Willis Leito is the daughter of Alex by his first wife and is half European. The Willis heirs, other than Josephine, are the children of Alex by his second wife Falesau, who is a full-blooded Samoan. Such children by Falesau are three-quarters Samoan and one-quarter European. Sometime after Alex's death, Falesau, his widow, married respondent Asi, an Upolu chief.

Alex and George Danielson were half-brothers, each having the same mother, a Samoan woman, but different European fathers. Alex and George were adopted by Laulii, a full-blooded Samoan woman, who was the sister of their Samoan mother. Laulii had no children of her own.

Neither Tuamauga nor Faipa is freehold land. Since George is half-European, he could not acquire an interest in any land other than freehold. Sec. 1216, A. S. Code. Accordingly, at the hearing he disclaimed any interest in Tuamauga and Faipa. The testimony showed that the land Faipa was acquired by Alex and George from Teo as a result of furnishing beef and salmon at the feast incident to the installation of Teo as a Chief in Pago Pago; that being half-European they could not get it registered in their own names and for this reason gave it to Laulii, their foster-mother, who, being a full-blooded Samoan, could get it directly in her name. This land was transferred directly from Teo to Laulii by a deed dated Novem-

ber 23, 1906 and recorded in Volume 1, Register of Native Titles, pages 83–85. A consideration of $100.00 was recited in the deed. The land Tuamauga was conveyed on December 24, 1906 by Molioo and Taesali to Laulii by deed recorded in Volume 1, Register of Native Titles, pages 86–90.

Laulii died intestate in Upolu about 1926 leaving Alex and his half-brother George Danielson as her heirs. Alex claimed to have inherited the lands Tuamauga and Faipa from Laulii and the Willis children claim that they in turn inherited such lands from him. There was no evidence that Alex left a will. Falesau claims that Alex inherited both Tuamauga and Faipa from Laulii and that she is the owner of Tuamauga as the result of a conveyance in 1936 of that land from Alex to her, the deed being recorded in Volume 2, Register of Transfers, pages 235–239. Falesau claims ownership of Faipa also. Her testimony indicated that her claim is based upon the fact that she was Alex's wife.

■ Since Alex was half European he did not become the owner of either Tuamauga or Faipa upon the death of his adoptive mother Laulii. Sec. 1216 of the A. S. Code prohibits the alienation of "any lands except freehold lands to any person who has less than three-quarters native blood." As before stated these lands were not freehold property. Sec. 1215 of the Code provides that "As used in this Chapter 'Alienation' shall mean the sale, gift, exchange or any other method of disposal . . ." "Any other method of disposal" is broad enough to cover acquisition of land by inheritance or by will.

■■ The conclusion is irresistible that Alex did not have title to either Tuamauga or Faipa. It follows, therefore, that the deed from Alex to Falesau of Tuamauga in 1936 did not pass the title of that property to her. A man cannot pass the title to property which he does not own by

the device of making a deed to it. Nor did the deed acquire any validity because it was recorded. The purpose of recording a deed is to give notice to the public of the contents thereof. It is the deed that passes the title if any title is passed, not the recording. Since Alex did not and could not, under the law, own Faipa, Falesau obviously did not become owner of it because she was Alex's wife. Nor did the Willis children inherit either piece of land from Alex. He did not own the lands. Consequently, they could not pass from him to them by inheritance. There was nothing to inherit.

The evidence shows that Alex occupied Tuamauga with his wife, Falesau, and family from about 1915 and that he continued so to do until his death in 1943. There was, however, evidence that the 1936 deed from Alex to Falesau was a mere blind so as to enable money to be borrowed on a mortgage of Tuamauga from the Bank of American Samoa. Alex, being half-European, could not give a valid mortgage while Falesau, being a full-blooded Samoan could if she owned the property. It is a significant fact that the deed from Alex to Falesau and Falesau's mortgage to the bank were executed the same day. She testified that Alex handled the deed and the mortgage back in 1936 and that she did not "know anything about" the mortgage. Clearly she was just a straw-man in a transaction by which Alex got some money from the bank on mortgage.

It is not necessary for us to decide whether the deed was merely colorable. Whether it was, or not, makes no difference because Alex had no title to pass by deed.

Upon Alex's death, the Willis children who were then living on Tuamauga with Alex and Falesau immediately claimed ownership and right of possession based upon a supposed inheritance from Alex. Falesau also claimed ownership and the right of possession, basing her claim upon the deed of 1936 and also as she put it in her testi-

mony, "Because Alex feels that I should have all his properties." The Willis heirs also claimed ownership of Faipa and the right of possession (subject to the right of the Marines to occupy it temporarily under the laws of war) upon Alex's death. Falesau made similar claim in her own behalf.

On two occasions prior to the war some of Alex's children had lived on Faipa and had plantations there with Alex and Falesau's permission. We think that on these occasions they were mere licensees and acquired no interest in the land. At these times they made no claim to the ownership of Faipa. However, at the time the Marines moved into it shortly after the war started, Alex and Falesau had possession of it and had some plantations on it. The Marines built four houses on Faipa and damaged some of the vegetation. They were occupying Faipa when Alex died. After the Marines moved out, the Willis heirs and Falesau took possession of it, claiming title thereto.

Falesau and the Willis children (seven of them Falesau's own children and Josephine, Alex's daughter by his first wife) were living together and happy in the possession of Tuamauga and Faipa. They had plenty of land and a home. But this happiness was doomed to come to an end.

In 1944 the widow Falesau married Asi from Upolu. Asi then tried to get money from the Willis children, but did not succeed. Shortly thereafter the children received a letter from their mother telling them to get out of the land Tuamauga within three weeks. Asi wrote the letter himself and Falesau signed it. The children appealed informally to certain government officials to protect them in the possession of their land and home. But protection was not forthcoming. We think such officials relied upon the record of the 1936 deed not knowing that Alex was half-European and that the deed passed no title to Falesau. The Willis children moved out leaving Tuamauga to Falesau and Asi,

who took exclusive possession of it for some time. Later Asi received an invitation from the military authorities to leave Tutuila, and he and his wife left for Upolu.

Any rights of ownership which the Willis children and Falesau may have in Tuamauga and Faipa have not been derived through or from Alex because he could not lawfully be the owner of either property. Nevertheless, the fact is that Falesau and the heirs were peaceably in possession of both properties, Tuamauga upon the death of Alex and of Faipa sometime thereafter when the Marines moved out. Not all the children were in actual possession of Faipa but some of them lived on the property claiming ownership for all and their mother. All of them went to Faipa at times. We think from the evidence that in the eyes of the law Faipa was in the possession of all the children and Falesau as was Tuamauga.

 "Possession itself is a species of title, of the lowest grade, it is true; yet it is good against all who cannot show a better, and by lapse of time may become, under the statute, perfect and indefeasable." White, J., in *McNeally v. Langan*, 22 Ohio St. 32. We regard this as a correct statement of the law and applicable to this case. See also II Tiffany on Real Property (2nd ed.) Sec. 511; *Kossell v. Rhoades*, 272 Pa. 75; *Brothers v. Hurdle*, 32 N.C. 490. Of course the wrongful eviction of the children from Tuamauga by Falesau and Asi after their marriage did not deprive the children of any title they had by virtue of their possession together with Falesau, under claim of ownership.

 It follows from our view of the facts in this case and the law applicable thereto that, as against all persons who cannot show a better title and as among the parties to this case, Joseph Willis, Robert Willis, Tony Willis, Paul Willis, Dora Willis, Daisy Willis Aifili, Alexander Willis, Jr. and Falesau Willis Asi are co-owners of the lands Tua-

mauga and Faipa. Josephine Willis Leiato, having half-European blood acquired no title in either tract, not being eligible to own non-freehold land. Sec. 1216, A. S. Code.

The issues having been narrowed by the parties to the single question of ownership of Tuamauga and Faipa, it is not strictly necessary for the court to discuss the matter of the claim for war damage to such lands. Nevertheless we think it well to do so in order to avoid possible future litigation.

■ Falesau had a deed to Tuamauga and was living on it at the time the damage occurred there. This was before Alex's death. The deed gave her color of title. The children did not have possession of Tuamauga or claim any title thereto prior to Alex's death, since they claimed through inheritance from him. Clearly the children had no right to share in money paid by the United States for damage to Tuamauga. And the same thing can be said with respect to the money paid for war damage on Faipa. The children did not claim any interest in Faipa prior to Alex's death, nor did they have any possession prior thereto. The Marines put up the houses on Faipa and occupied it prior to Alex's death. We think Falesau had the right in view of all the facts to collect for the war damage to the two properties.

Toa has a lease of Tuamauga from Falesau at a monthly rental of $40.00. At the hearing he stated that he was quite willing to surrender possession if he did not have to pay any more rent.

■ At the common law if two or more persons disseised another for their own use, the disseisors were joint tenants. I Tiffany on Real Property (2nd Ed.) page 635; Littleton, Sec. 278; Co. Littleton 181a. Subject to certain limitations not here applicable "so much of the common law of England as is suitable to conditions in American Samoa" is a part of the law of this U.S. possession. Sec. 1, A. S.

Code. We do not believe that the doctrine of joint tenancy with the attendant right of survivorship as exists among joint tenants is suitable to conditions in American Samoa. Consequently, we hold that Falesau and her children by Alex are, as against all persons who cannot show a better title, tenants in common of the lands Tuamauga and Faipa and entitled to the possession of the same, subject to the rights of Toa against Falesau growing out of her lease to him, as before stated.

Josephine Willis Leiato, the half-sister of the other seven children of Alex, being half-European, is not eligible to own a share in Tuamauga and Faipa. Nevertheless, her half-brothers and half-sisters together with Falesau may give her permission to occupy and use the properties along with themselves. The Court feels in view of all the circumstances that there may very well be a moral obligation though not a legal one, on their part to do so.

It is ORDERED, ADJUDGED AND DECREED that, as against all persons who cannot show a better title, Joseph Willis, Robert Willis, Tony Willis, Paul Willis, Dora Willis, Daisy Willis Aifili, Alexander Willis, Jr. and Falesau Willis Asi are tenants in common of the lands Tuamauga and Faipa, each having an undivided one-eighth interest in such lands, and that they, subject to the rights of Toa as against Falesau, resulting from the lease hereinbefore referred to, are jointly entitled to the possession of such lands.

Costs in the sum of $6.25 are hereby assessed against Joseph Willis and $43.75 against Falesau, such costs to be paid within 30 days.